UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMY ALLEN and ) | |
| ROBERT ALLEN, ) | |
|      Plaintiffs ) | |
| ) | |
| v. ) | |
| ) | |
| TOWN OF EAST ) | |
| LONGMEADOW, CAPTAIN ) | Case No. 17-cv-30041-MGM |
| DOUGLAS MELLIS, Officially and ) | |
| Individually, SERGEANT ) | |
| PATRICK MANLEY, Officially ) | |
| And Individually, and JOHN DOES, ) | |
| Officially and Individually, ) | |
|      Defendants ) | |

REPORT AND RECOMMENDATION REGARDING DEFENDANTS'
MOTION TO DISMISS
(Dkt. No. 20)

ROBERTSON, U.S.M.J.

I.    INTRODUCTION

Currently before the court is the motion of the defendants, the Town of East

Longmeadow ("the Town"), Captain Douglas Mellis ("Mellis"), and Sergeant Patrick Manley

("Manley") (collectively, "Defendants") to dismiss federal and state law claims brought against

them by the named plaintiffs, Amy Allen ("Plaintiff") and her father, Robert Allen,[1] in

connection with the preparation and subsequent release of records by the Town's Police

Department that allegedly contained confidential personal information about Plaintiff and that

painted her in a false light.  Plaintiff claims principally that Defendants violated her rights when

---

[1] In the plaintiffs' opposition to Defendants' motion to dismiss, the plaintiffs concede that Robert Allen's claims should be dismissed (Dkt. No. 30 at 6).  Accordingly, the court refers to Amy Allen as the sole plaintiff in this action.  To avoid confusion, Mr. Allen is referred to herein as Robert Allen.

the Town's police department produced documents in its custody in response to a subpoena issued by the Massachusetts Family and Probate Court and served on the department on behalf of Plaintiff's former husband in a Family and Probate Court proceeding.  Plaintiff's complaint, filed while she was self-represented, asserts federal claims under 42 U.S.C. § 1983 ("§ 1983") for violations of her constitutionally protected right to equal protection (Count One) and of her rights to privacy, liberty, and to be free from unreasonable searches (Count Three), and state law claims of negligence in hiring and training against the Defendants under the Massachusetts Tort Claims Act, Mass. Gen. Laws ch. 258, § 2 (Counts One and Two).[2]  Out of an abundance of caution, the court reads the complaint as also asserting a federal claim in Count Two against the Town for failure to train and supervise under § 1983.  Defendants' motion to dismiss has been referred to the undersigned for report and recommendation (Dkt. No. 23).  The court heard the parties at oral argument on October 24, 2017 (Dkt. No. 34) and hereby recommends that Defendants' motion be GRANTED.  More specifically, the undersigned recommends that Plaintiff's federal claims in Counts One, Two, and Three be dismissed with prejudice, that the court decline to exercise supplemental jurisdiction over Plaintiff's remaining state law negligence claims in Counts One and Two, dismissing those claims without prejudice, and that the case be closed on the court's docket.

## II.   FACTS ALLEGED IN PLAINTIFF'S AMENDED COMPLAINT

As background to her claims, Plaintiff's amended complaint alleges a history of contacts with the Town's police department.  She, her then-husband, and their children moved to East

---

[2] Although Plaintiff was self-represented when she filed her initial and her amended complaint, she had obtained counsel prior to the October 24, 2017 hearing on Defendants' motion to dismiss.  At the hearing, the court asked Plaintiff's counsel to identify each of the claims asserted in Plaintiff's amended complaint.  Plaintiff's counsel stated that the claims identified above were the claims asserted in Plaintiff's amended complaint.

Longmeadow in July 2007.  She reached out to the police department almost immediately when she discovered that prescription medications she had shipped to her new home had not arrived. According to the amended complaint, this was the first of several dozen interactions she and other members of her family, including her ex-husband, would have with the Town's police department over the next six or seven years (Dkt. No. 19 at 6, ¶ 14).

On or around November 15, 2008, Plaintiff reported an incident of physical abuse by her husband to the Town's police department.  She obtained an abuse prevention order which remained in effect for some 22 months.  She then filed for a divorce, which became final on February 25, 2011.  Plaintiff and her children continued to occupy what had been the marital residence in East Longmeadow (*id.* at 6-7, ¶ 15).  Plaintiff's former husband remarried.  Shortly thereafter, his new wife obtained a harassment prevention order against Plaintiff from a court in a county adjoining Hampden County (*id.* at 7, ¶ 16).  On February 6, 2013, Plaintiff's ex-husband and his new wife filed complaints with the Town's police department alleging that Plaintiff had violated the harassment prevention order.  Police officers arrested Plaintiff without adequately investigating the allegations.  The resulting charges against Plaintiff were dismissed on motion (*id.* at 8, ¶ 17).

Several weeks after dismissal of the charges against Plaintiff, having been alerted to the problem by Plaintiff's children, Plaintiff's neighbor called the Town's police department and reported that Plaintiff was in her home unresponsive.  Police officers responded, found her in distress on the floor, transported her to the hospital, and secured her home.  When a case worker employed by the Department of Children and Families ("DCF") arrived, a police officer escorted the DCF case worker into and through Plaintiff's home from which the DCF case worker removed personal items.  Plaintiff's ex-husband was also permitted to enter the home.  The

police and the DCF case worker took pictures of the inside of the home.  When Robert Allen

complained to Manley about the police department's handling and investigation of this incident,

Manley declined to take further action and told Robert Allen to ask the Massachusetts State

Police ("MSP") to look into the matter if he desired further action.  At Robert Allen's prompting,

the MSP did so, found no fault with the East Longmeadow police department's investigation,

and declined any further involvement (*id*. at 8-10, ¶¶ 18-19).

On or around July 22, 2013, Plaintiff called the Town's police department after she was

assaulted in her home.  An ensuing investigation by the Town's police department resulted in

charges being brought against Plaintiff and the individual whom she claimed had assaulted her.

According to the amended complaint, the charges against the other individual were dismissed but

the prosecutor refused to dismiss the charges against Plaintiff because the Town's police

department adamantly opposed dismissal (*id.* at 10-11, ¶¶ 21, 23).  The amended complaint does

not set forth the ultimate disposition of these charges against Plaintiff.

On or about March 7, 2014, counsel for Plaintiff's ex-husband caused a subpoena duces

tecum to be served on the Keeper of the Records for the East Longmeadow Police Department

requiring the production in the Family and Probate Court, on March 11, 2014, of the following

documents:

> Any and all incident reports, arrest reports involving Amy Allen, DOB . . . or calls
> for service to . . . Avenue, East Longmeadow, MA between April 1, 2012 to
> present, including but not limited [to] report number 13-649OF, Date of Offense –
> 7/22/2013.

(Dkt. No. 21-1 at 25).[3]  The Town's police department responded to the subpoena by "providing

a wide range of documents, police reports, court records and other documents and information

---

[3] A copy of a May 11, 2015 presentment letter from Plaintiff to the Town, with attachments to
the presentment letter (most of which are redacted), was submitted as Exhibit 1 ("Exh. 1") to

still unknown to Plaintiff" (Dkt. No. 19 at 11, ¶ 22).  One of the documents provided in response

to the subpoena "was a police report (and possibly the court documents associated with it)

dealing with the incident of July 22-23, 2013" (*id.*, ¶ 23).  Another was the so-called "Mellis

report" (*id.* at 12, ¶ 25).  The amended complaint alleges that the Mellis report was a summary of

numerous contacts between Plaintiff and the Town's police department that also contained brief

descriptions and analyses of other events involving Plaintiff that were brought to the police

department's attention by third parties.  It includes a reference to the incident about which Robert

Allen complained to the MSP.  According to Plaintiff, the document "contains many self-serving

and subjective statements which demonstrate a disdain for [Plaintiff] and question her veracity"

(*id.* at 10, ¶ 20).

      The attorney for Plaintiff's ex-husband introduced the subpoenaed documents at a Family

and Probate Court hearing (*id.* at 12, ¶ 25).  When Defendants produced the documents, Plaintiff

was employed as an adjunct professor at three community colleges.  Within days of the

documents' production, she was confronted by two of her employers about the contents of the

documents and she was immediately suspended and subsequently had her employment

terminated by these employers (*id.* at 12, ¶ 26).  It is reasonable to infer that Plaintiff is alleging

---

Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiffs'
Amended Complaint (Dkt. 21-1).  An unredacted copy of the subpoena duces tecum referenced
in Plaintiff's amended complaint is included in Exh. 1.  The claims in Plaintiff's amended
complaint depend in significant part on the police department's response to this subpoena and
she has not contested the authenticity of the copy of it submitted to the court by Defendants.
"'Ordinarily, a court may not consider any documents that are outside of the complaint, or not
expressly incorporated therein, unless the motion is converted into one for summary judgment.'"
*Perkins v. City of Attleboro*, 969 F. Supp. 2d 158, 164 (D. Mass. 2013) (quoting *Alt. Energy Inc.
v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001)).  There are exceptions for
documents the authenticity of which is not disputed, that are central to a plaintiff's claims, or that
are sufficiently referred to in a plaintiff's complaint. *See id.*; *see also, e.g., Watterson v. Page*,
987 F.2d 1, 3 (1st Cir. 1993).  Because the copy of the subpoena duces tecum filed by
Defendants satisfies all of these criteria, it is appropriate for the court to rely on it.

that the production of the documents in the pending Family Court matter contributed to a loss of

the custody of her children, although this allegation is not clearly stated (*id.* at 4, ¶ 7).

III.   <u>DISCUSSION</u>

A.  <u>Standard of Review</u>

To survive a motion to dismiss, a "'complaint must contain enough factual material to

raise a right to relief above the speculative level . . . and state a facially plausible legal claim,'"

*Guerra-Delgado v. Popular, Inc*., 774 F.3d 776, 780 (1st Cir. 2014) (quoting *Ocasio-Hernández*

*v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011)), "accept[ing] as true well-pleaded facts in the

complaint and draw[ing] all reasonable inferences in the pleader's favor.  *Id*. (citing *Tasker v.*

*DHL Rev. Sav. Plan*, 621 F.3d 34, 38 (1st Cir. 2010)).  In resolving a motion to dismiss, the court

employs a two-step approach.  *Medina-Velázquez v. Hernández-Gregorat*, 767 F.3d 103, 108

(1st Cir. 2014) (citing *Ocasio-Hernández*, 640 F.3d at 12).

> First, [the court] "must separate the complaint's factual allegations
> (which must be accepted as true) from its conclusory legal
> allegations (which need not be credited)."  *A.G. ex. rel. Maddox v.*
> *Elsevier, Inc*., 732 F.3d 77, 80 (1st Cir. 2013) (internal quotation
> marks omitted).  Second, [the court] "must determine whether the
> remaining factual content allows a reasonable inference that the
> defendant is liable for the misconduct alleged."  *Id*. (internal
> quotation marks omitted).

*Medina-Velázquez*, 767 F.3d at 108.  While "a complaint need not plead facts sufficient to make

out a prima facie case or allege all facts necessary to succeed at trial," *id*. (citing *Carrero-Ojeda*

*v. Autoridad de Energía Eléctrica*, 755 F.3d 711, 717-18 (1st Cir. 2014)), the elements of a

prima facie case "form[] 'part of the background against which a plausibility determination

should be made.'"  *Id*. (quoting *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 54 (1st Cir.

2013)).  "An analysis of plausibility is 'a context-specific task that requires the reviewing court

to draw on its judicial experience and common sense.'"  *Id*. at 109 (quoting *Grajales v. P.R.*

*Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012)).  That said, "the court may not disregard properly

pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is

improbable.'"  *Ocasio-Hernández*, 640 F.3d at 12 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 556 (2007)).   "[A] court [may not] attempt to forecast a plaintiff's likelihood of success on

the merits; 'a well-pleaded complaint may proceed even if … a recovery is very remote and

unlikely.'"  *Id*. at 12-13 (quoting *Twombly*, 550 U.S. at 556).

Because Plaintiff was self-represented when she filed the amended complaint, the court

liberally construes her allegations.  *See Rodi v. Southern New England Sch. of Law*, 389 F.3d 5,

13 (1st Cir. 2004) (citing *Boivin v. Black*, 225 F.3d 36, 43 (1st Cir. 2000)).   Plaintiffs who

represent themselves must, however, still comply with procedural rules and satisfy substantive

requirements and "dismissal remains appropriate . . . when the complaint fails to even suggest an

actionable claim."  *Overton v. Torruella*, 183 F. Supp. 2d 295, 303 (D. Mass. 2001) (citing

*Lefebvre v. Comm'r Internal Rev.*, 830 F.2d 417, 419 (1st Cir. 1987)).

B.  Federal Claims

"'Section 1983 supplies a private right of action against a person who, under color of

state law, deprives another of rights secured by the Constitution or by federal law.'"  *Santiago v.*

*Puerto Rico*, 655 F.3d 61, 68 (1st Cir. 2011) (quoting *Redondo-Borges v. U.S. Dep't of HUD*,

421 F.3d 1, 7 (1st Cir. 2005)).   A cause of action under § 1983 is comprised of two essential

elements.  First, because § 1983 does not reach private actions, *Rodríguez-Garcia v. Dávila*, 904

F.2d 90, 95 (1st Cir. 1990), a plaintiff must show "that the conduct complained of transpired

under color of state law."  *Santiago*, 655 F.3d at 68 (citing *Redondo-Borges*, 421 F.3d at 7).

Second, because "Section 1983 'is not itself a source of substantive rights,' but merely provides

'a method for vindicating federal rights elsewhere conferred,'"  *Albright v. Oliver*, 510 U.S. 266,

270 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)), a plaintiff must show

"that a deprivation of federally secured rights ensued," *Santiago*, 655 F.3d at 68 (citing *Redondo-*

*Borges*, 421 F.3d at 7).  There is no dispute that Defendants qualify as state actors.  Accordingly,

the court turns to the question of whether Plaintiff has adequately alleged any deprivation by

these Defendants of rights protected by federal statute or the United States Constitution.

    1.   Equal Protection

    "Ordinarily, equal protection claims arise when a member of a protected class, such as a

racial minority, is treated less advantageously than people outside the protected class." *Johnson*

*v. Prospect Mountain JMA Sch. Dist. SAU 301*, Civil No. 13-cv-207-LM, 2014 WL 2588952, at

*3 (D.N.H. June 9, 2014).  Because Plaintiff does not allege that she was treated differently

based on a protected characteristic, her equal protection claim is most appropriately analyzed as

a so-called class-of-one claim.  *See, e.g., Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564

(2000); *Middleboro Veterans' Outreach Ctr. Inc. v. Provencher*, 502 Fed. App'x 8, 10 (1st Cir.

2013) (unpublished).  "To plead a 'class-of one' claim, [Plaintiff] must allege facts to establish

that [she] was intentionally treated differently from others who were similarly situated without a

rational basis and that the difference was 'due to malicious or bad faith intent on the part of the

defendants to injure [her].'"  *Pollard v. Georgetown Sch. Dist.*, 132 F. Supp. 3d 208, 223 (D.

Mass. 2015) (quoting *Priolo v. Town of Kingston*, 839 F. Supp. 2d 454, 460 (D. Mass. 2012)

(quoting *Walsh v. Town of Lakeville*, 431 F. Supp. 2d 134, 145 (D. Mass. 2006) (internal

quotation marks omitted))).  Here, because the individual defendants have raised the defense of

qualified immunity (Dkt. No. 21 at 9), Plaintiff bears the further "burden of showing that

qualified immunity does not apply." *Sargent v. Town of Hudson*, Civil No. 14-cv-509-AJ, 2017

WL 4355972, at *1, 6 (D.N.H. Sept. 27, 2017) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735

(2011); *Mitchell v. Miller*, 790 F.3d 73, 77 (1st Cir. 2015); *Lopera v. Town of Coventry*, 640 F.3d 388, 395-96 (1st Cir. 2011)) ("[W]hen a movant raises qualified immunity, the non-movant bears the burden of demonstrating that qualified immunity does not apply.").

To meet her burden on the question of qualified immunity, Plaintiff must show that Mellis and Manley "'violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

> In assessing whether qualified immunity applies, the court considers two prongs: (1) "whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right"; and (2) "whether the right was 'clearly established' at the time of the defendant's alleged violation." *Fernandez-Salicrup v. Figueroa-Sancha*, 790 F.3d 312, 325 (1st Cir. 2015) (quoting *Glik v. Cunniffe*, 655 F.3d 78, 81 (1st Cir. 2011)). Though "it is often beneficial" to consider the qualified immunity prongs in order, it is no longer mandatory that courts do so. *Pearson*, 555 U.S. at 236 . . . . This is especially true in cases where "it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." *Id.* at 237 . . . . Thus, courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Id.* at 236 . . . , *see also Fernandez-Salicrup*, 790 F.3d at 326 (noting that a court "may address these issues in any order.").

*Sergent*, 2017 WL 4355972, at *6.

Plaintiff contends that her amended complaint adequately alleges a class-of-one equal protection violation because, in comparison to other town residents "who may have been investigated by the Defendant Town police and/or formally charged with criminal conduct," she was treated differently and her constitutional rights were violated by preparation of the Mellis report and its disclosure when it was produced in response to the Family and Probate Court subpoena served on the police department (Dkt. No. 30 at 14-15). Plaintiff further contends that the amended complaint adequately alleges a violation of clearly established law because disclosure of the contents of the Mellis report (and possibly of other documents produced in

9

Case 3:17-cv-30041-MGM   Document 36   Filed 02/09/18   Page 10 of 29


response to the subpoena) was in violation of Massachusetts statutes that mandate the confidentiality of police department records and reports that contain the name of an alleged victim of sexual assault and provide for fines for the violation of these statutory provisions (Dkt. No. 19 at 11, ¶ 23).[4]  As Defendants contend, for several reasons, the amended complaint fails to

---

[4] The amended complaint alleges that Defendants violated the provisions of "FRCP 45, MGL 216, s. 47, MGL 41, s. 97D, MGL 265, s. 24C" (Dkt. No. 19 at 12, ¶ 24).  Neither Federal Rule of Civil Procedure 45, which addresses subpoenas to third parties for purposes of discovery, nor Federal Rule of Criminal Procedure 45, which addresses extending and computing time, appears to have any relevance or application to any allegation or claim in Plaintiff's amended complaint. Nor does Massachusetts General Laws ch. 216, § 47, which has been repealed.

Massachusetts General Laws ch. 41, § 97D, provides, in pertinent part, as follows:

> All reports of rape and sexual assault or attempts to commit such offenses, all reports of abuse perpetrated by family or household members, as defined in section 1 of chapter 209A, and all communications between police officers and victims of such offenses or abuse shall not be public reports and shall be maintained by the police departments in a manner that shall assure their confidentiality . . . .  Communications between police officers and victims of said offenses and abuse may . . . be shared with [certain] named persons if such access is necessary in the performance of their duties.  A violation of this section shall be punished by imprisonment for not more than 1 year or by a fine of not more than $1,000, or both such fine and imprisonment.

Massachusetts General Laws ch. 265, § 24C, provides, in pertinent part, as follows:

> That portion of the records of a court or any police department of the commonwealth . . . which contains the name of the victim in an arrest, investigation or complaint for rape or assault with intent to rape . . . or an arrest, investigation or complaint for trafficking of persons . . . shall be withheld from public inspection, except with the consent of a justice of such court where the complaint or indictment is or would be prosecuted.

> Said portion of such court record or police record shall not be deemed to be a public record under the provisions of section seven of chapter four.

> Except as otherwise provided in this section, it shall be unlawful to publish, disseminate or otherwise disclose the name of any individual identified as an alleged victim of any of the offenses described in the first paragraph.  A violation of this section shall be punishable by a fine of not less than two thousand five hundred dollars nor more than ten thousand dollars.

set forth a cognizable equal protection claim.

Class-of-one claims require an extremely high degree of similarity between a plaintiff and the individual(s) to whom she compares herself.  *See Freeman v. Town of Hudson*, 714 F.3d 29, 38 (1st Cir. 2013); *Pollard*, 132 F. Supp. 3d at 223.  At the most general level, Plaintiff's amended complaint fails to state a claim for a violation of her constitutional right to equal protection against Mellis, Manley, and the Town because she has failed to identify any other person who was similarly situated to her and was treated differently by Defendants.  She has not alleged that Mellis or Manley or the Town's police department declined to produce records in response to a subpoena for records about any other town resident, nor has she alleged that she was treated differently than any similarly situated individual with respect to the nature of records created and maintained by Mellis, Manley, or the police department.  Plaintiff's failure to offer more than a bald allegation that she was treated differently than other similarly situated individuals is fatal to this claim.  *See Pollard*, 132 F. Supp. 3d at 223 (dismissing equal protection claim based on plaintiff's "failure to plead factual allegations about [plaintiff's] similarity to other students and the [defendant's] differential treatment"); *see also Gianfrancesco v. Town of Wrentham*, 712 F.3d 634, 640 (1st Cir. 2013) (affirming dismissal of class-of-one equal protection claim where complaint identified single comparator but made no effort to establish why the comparator was similarly situated to the plaintiff and did not mention any other putative comparator); *Provencher*, 502 Fed. App'x at 11-12 ("Our precedents 'place the burden on the plaintiff . . . to show such identity of entities and circumstances to a high degree.'") (quoting *Rectrix Aerodrome Ctrs., Inc. v. Barnstable Mun. Airport Comm'n*, 610 F.3d 8, 16 (1st Cir. 2010)).

_____

11

Plaintiff's equal protection claim also fails as to the individual defendants on qualified immunity grounds because, as they contend, there was no violation of any clearly established constitutional right to equal protection when the police department responded to a facially valid Family and Probate Court subpoena or when it wrote the Mellis report.  On this point, the court considers the *Sargent* case instructive.  As the *Sargent* court noted, while the "clearly established" requirement "does not require a 'case directly on point, . . . existing precedent must have placed the statutory or constitutional question beyond debate.'"  *Sargent*, 2017 WL 4355972, at *7 (quoting *Mullenix*, 136 S.Ct. at 308 (quoting *al-Kidd*, 563 U.S. at 741) (internal quotation marks omitted)).  A plaintiff must therefore identify "'controlling authority or a robust consensus of cases of persuasive authority' demonstrating that the individual defendants reasonably should have known that their conduct was unlawful at the time it occurred."  *Id.* (quoting *Plumhoff v. Rickard*, 134 S.Ct. 2012, 2023 (2014) (quoting *al-Kidd*, 563 U.S. at 741) (internal quotation marks omitted)).  "Whether a constitutional right is 'clearly established' is a matter of law for the court."  *Plummer v. Town of Somerset*, 601 F. Supp. 2d 358, 364 (D. Mass. 2009) (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)).

In *Sargent*, the plaintiff, a former police dispatcher, was married to a police officer in a neighboring town.  She claimed that the police department that was her former employer treated her reports of domestic violence differently than those made by other victims because her abuser was a law enforcement officer.  The plaintiff in *Sargent* identified a single decision from a different jurisdiction that addressed differential treatment of a victim of domestic violence due to her abuser's relationship with law enforcement.  *See Sargent*, 2017 WL 4355972, at *8.  That decision, *Shipp v. McMahon*, 234 F.3d 907 (5th Cir. 2000), "only posit[ed] that the conduct at issue [might] violate equal protection."  *Sargent*, 2017 WL 4355972, at *8 (citing *Shipp*, 234

F.2d at 916-17).  The *Sargent* court concluded that "[s]imply put, *Shipp* . . . [wa]s insufficient, particularly in isolation, to clearly establish the right [plaintiff] [sought] to invoke."  *Id.*

Here, Plaintiff has identified *no* case that would have informed the individual defendants or any police officer employed by the Town that it was a violation of federal statutory or constitutional law to produce records or documents in the police department's possession – regardless of their content – that were responsive to a subpoena issued by a state trial court. Thus, the police department's production of documents responsive to the Family and Probate Court subpoena did not violate any clearly established equal protection right (or, for that matter, any other federal constitutional or statutory right) benefitting Plaintiff.  Nor has she identified any case or federal law, regulation, or policy that sets any limits on or defines the nature of the information or the form of the documents that a municipal police department may maintain concerning a resident.  *Cf. Gordo-Gonzalez v. United States*, 873 F.3d 32, 36 (1st Cir. 2017) (in a case where the plaintiff claimed that the FBI should be liable for her husband's use of FBI equipment to spy on her, the plaintiff failed to state a *Bivens* claim where she "point[ed] to no federal statute, regulation, or policy" that was violated by the action or inaction of her husband's supervisors).  Thus, the fact that the Town's police department put together the so-called Mellis report also did not violate any clearly established equal protection right (or any other federal constitutional or statutory right) benefitting Plaintiff.

Plaintiff's reliance on the state laws, set forth *supra*, that prohibit disclosure of the identity of a victim of an alleged sexual assault is unavailing (Dkt. No. 30 at 16).  First, Plaintiff is notably vague about the content of the documents produced in response to the subpoena and their content cannot be gleaned from the amended complaint.  While pointing to Mass. Gen. Laws ch. 41, § 97D and Mass. Gen. Laws ch. 265, § 24C, Plaintiff does not actually allege that

she was identified in any document produced by the police department as the alleged victim of a

sexual assault.  *See Perkins*, 969 F. Supp. 2d at 177 (dismissing constitutional invasion of

privacy claim in part because the plaintiff failed to identify the confidential personnel

information allegedly improperly disclosed by the defendants).[5]

     Second, leaving aside this fatal gap in the amended complaint, "[t]he argument is a

nonstarter . . . as the Supreme Court has made clear that in order to defeat qualified immunity,

the clearly established right must be the federal right on which the claim for relief is based."

*Sargent*, 2017 WL 4355972, at *8 (citing *Elder v. Holloway*, 510 U.S. 510, 515 (1994); *Davis v.*

*Scherer*, 468 U.S. 193-96 & n.14 (1984); *Hill v. Selsky*, 487 F. Supp. 2d 340, 343 (W.D.N.Y.

2007)).  Regardless of whether the individual defendants were implicated in a release of personal

information about Plaintiff that was improper under state law, Plaintiff has offered "no support

for the proposition that, as of [March 2014], this provision had a clear basis in *federal*

constitutional or statutory law.  'Mere violations of state law do not, of course, create

constitutional claims.'"  *Vargas-Badillo v. Diaz-Torres*, 114 F.3d 3, 6 (1st Cir. 1997) (quoting

*Roy v. City of Augusta*, 712 F.2d 1517, 1522 (1st Cir. 1983)).  Where, as here, Plaintiff has failed

---

[5] Defendants argue that state law does not prohibit a police department from producing
documents in response to a state court subpoena even if those documents contain personal
information and, for this reason, Plaintiff's amended complaint fails to allege any illegal conduct
by Defendants that could be a basis of liability on any theory (Dkt. No. 21 at 4-7).  In response,
Plaintiff appears to contend that the prohibition under state law against disclosing the identity of
the victim of an alleged sexual assault applies in the circumstances alleged in the amended
complaint (Dkt. No. 30 at 8).  The court need not decide whether, as a matter of state law, the
Town was permitted to respond to the subpoena with documents that may have disclosed the
identity of a victim of sexual assault because this is (a) a complicated question of state law and
(b) not a critical question that requires resolution for purposes of ruling on Defendants' motion to
dismiss.  *Cf. Hatch v. Town of Middletown*, 311 F.3d 83, 86 (1st Cir. 2002) (affirming summary
judgment on qualified immunity grounds for Rhode Island police officers on plaintiff's claims
that members of a municipality's police department violated Rhode Island law by releasing
information about the plaintiff's arrest).

to satisfy her burden to identify controlling or persuasive precedent that clearly established the constitutional right to equal protection she claims was violated by the individual defendants, they are protected by qualified immunity. *See, e.g., al-Kidd*, 563 U.S. at 741-744; *Sergent*, 2017 WL 4355972, at *1, 6, 8.

Finally, dismissal of Plaintiff's equal protection claims against Mellis and Manley is required because she has not pled facts establishing that either of the individually named defendants was personally responsible for the actions she claims violated her rights. The Supreme Court has instructed that in "§ 1983 suits, a plaintiff must plead that each Government-official defendant, *through the official's own individual actions,* has violated the Constitution." *Iqbal*, 556 U.S. at 676. This principle bars Plaintiff's claims concerning her equal protection claims. While Plaintiff has alleged that the Mellis report was captioned with Mellis's name, the amended complaint is silent as to whether he contributed any allegedly objectionable content to the report or directed its preparation. Furthermore, the alleged injuries arose from *disclosure* of the report, not from its preparation (Dkt. No. 19 at 3, 10, 22, ¶¶ 5, 20, 25). There is no allegation that Mellis or Manley knew that a subpoena had been served on the police department or managed, encouraged, condoned, or acquiesced in the police department's response to the subpoena. Indeed, Plaintiff alleges that the Mellis report "appears to have been generated for internal police department use only" (Dkt. No. 12, ¶ 25). Plaintiff's failure to allege acts by the individual defendants that violated her constitutional right to equal protection warrants dismissal of these claims unless they can otherwise be sustained. *See, e.g., Pollard*, 132 F. Supp. 3d at 229.

Fairly read, the amended complaint asserts claims against Mellis and Manley "by reason of their supervisory roles in [the operations of the police department]" (Dkt. No. 19 at 2, ¶ 3),

rather than based on their individual actions.  To state a claim for supervisory liability under §

1983, a plaintiff must first show "that one of the supervisor's subordinates abridged the

plaintiff's constitutional rights."  *Guadalupe-Baez v. Pesquera*, 819 F.3d 509, 514 (1st Cir. 2016)

(citing *Pineda v. Toomey*, 533 F.3d 50, 54 (1st Cir. 2008)).  "Second, the plaintiff must show that

'the [supervisor]'s action or inaction was affirmative[ly] link[ed] to that behavior in the sense

that it could be characterized as supervisory encouragement, condonation, or acquiescence or

gross negligence amounting to deliberate indifference.'"  *Id.* (quoting *Pineda*, 533 F.3d at 54)

(alterations in original) (quoting *Lipsett v. Univ. of P.R.*, 864 F2d 881, 902 (1st Cir. 1988)).

Purpose, rather than mere knowledge, is required before an official properly can be charged with

constitutional violations arising from his or her supervisory responsibilities.  *See Iqbal*, 556 U.S.

at 677.  "[A]supervisor may not be held liable under section 1983 on the tort theory of

respondeat superior, nor can a supervisor's section 1983 liability rest solely on his position of

authority."  *Guadalupe-Baez*, 819 F.3d at 514 (citing *Ramirez-Lluveras v. Rivera-Merced*, 759

F.3d 10, 19 (1st Cir. 2014)).  Here, that is all Plaintiff has alleged and it is not enough.

        In limited circumstances, a plaintiff may rely on a theory of deliberate indifference as a

basis for supervisory liability.  To state such a claim, a plaintiff "must show '(1) that the officials

had knowledge of facts' from which (2) 'the official[s] can draw the inference' (3) 'that a

substantial risk of serious harm exists.'"  *Id.* at 515 (quoting *Ramirez-Lluveras*, 759 F.3d at 20

(alteration in original) (quoting *Ruiz-Rosa v. Rullan*, 485 F.3d 150, 157 (1st Cir. 2007)).

"[D]eliberate indifference alone does not equate with supervisory liability."  *Figueroa-Torres v.

Toledo-Davila*, 232 F.3d 270, 279 (1st Cir. 2000).  "[T]he causal link between a supervisor's

conduct and the constitutional violation must be solid," and "a supervisor must be on notice of

the violation."  *Guadalupe-Baez*, 829 F.3d at 515 (citing *Ramirez-Lluveras*, 759 F.3d at 20).

Thus, in *Guadalupe-Baez*, where the First Circuit found that deliberate indifference was adequately alleged, the plaintiff contended that he was the victim of an unprovoked shooting by a police officer followed by official stonewalling about the circumstances in which he was shot. He sued various supervisory officials of the Puerto Rico Police Department for violating his Fourth Amendment rights.  The court found that the complaint adequately stated a claim against only one of these officials: the Superintendent of the Puerto Rico Police Department.  This was so because the complaint alleged that the Superintendent was on notice of widespread and egregious Fourth Amendment violations in the department by reason of a Department of Justice report that was issued before he became Superintendent and well before Plaintiff was shot.  The First Circuit held that the complaint adequately alleged supervisory liability against the Superintendent because he was responsible for overseeing and directing all administrative, operational, training, and disciplinary aspects of the department, was on notice by means of the Department of Justice report that egregious misconduct was occurring and of the risks posed by that misconduct, failed to address it, and that this pattern of egregious acts by police officers could plausibly be viewed as the cause of the plaintiff's injuries.  *See id.* at 516.

There are no allegations in Plaintiff's amended complaint remotely comparable to the allegations in *Guadalupe-Baez*.  Plaintiff does not claim that either Mellis or Manley knew about the subpoena or participated in the police department's decision about how to respond to it or that the department had a history of releasing confidential information in violation of residents' federal constitutional rights.  The deliberate indifference standard imposes obligations that are very difficult to meet at the pleading stage.  *See Guadalupe-Baez*, 829 F.3d at 515.  Plaintiff has not met her burden here.  That Plaintiff has alleged no basis for supervisory liability on the part of Mellis or Manley provides an independent basis for the recommendation that Plaintiff's §

1983 equal protection claims against these defendants be dismissed with prejudice.

For the foregoing reasons, the undersigned recommends that Plaintiff's equal protection claims be dismissed with prejudice as to all Defendants.

    2.  Rights to Privacy and Liberty

The privacy right to which Plaintiff alludes in Count III of the amended complaint "is the 'individual interest in avoiding disclosure of personal matters.'"  *Coughlin v. Town of Arlington*, C.A. No. 10-10203-MLW, 2011 WL 6370932, at *12 (D. Mass. Dec. 19, 2011) (quoting *Whalen v. Roe*, 429 U.S. 589, 599 (1977)).[6]  Plaintiff's claims in Count III against Mellis and Manley for a violation of a constitutionally protected right to privacy also fail on qualified immunity grounds because whether there is a constitutional "right against the disclosure of private information is an unsettled and hotly contested question of law."  *Id.* at 13.  In 2011, the *Coughlin* court observed that the Supreme Court has never decided the question despite having had several opportunities to do so.  *Id.* (citing *Nat'l Aeronautics & Space Admin. v. Nelson*, 131 S.Ct. 746, 764-65 (2011) (Scalia, J. concurring)).  For its part, "[t]he First Circuit has held that the right [to privacy], if it exists at all, is not clearly established."  *Id.* (citing *Borucki v. Ryan*, 827 F.2d 836, 844-45 (1st Cir. 1987)).  Although *Borucki* is a case from the 1980s, the state of the law in this area has not been clarified or settled in this Circuit in the intervening period.  *Id.* (citing *Klein v. MHM Corr. Servs., Inc.*, No. 08-11814-MLW, 2010 WL 3245291, at *4-5 (D. Mass. Aug. 16, 2010); *Demers ex rel. Demers v. Leominster Sch. Dept.*, 263 F. Supp. 2d 195, 203 n.4 (D. Mass. 2003)).  *See*

---

[6] In Plaintiff's amended complaint, she appears to frame her claim for a violation of her right to privacy principally as a violation of a right protected by the Fourth Amendment (Dkt. No. 19 at 17).  So far as appears from the amended complaint, the alleged disclosure of Plaintiff's personal information was not the result of a search or seizure by the individual defendants or any other member of the Town's police department.  A more plausible basis for the claim is the Fourteenth Amendment.  *See Coughlin*, 2011 WL 6370932, at *12.

*also Perkins*, 969 F. Supp. 2d at 177 ("[T]he City defendants are correct that the First Circuit has

not ruled on whether a right of privacy as alleged in the Complaint exists, and that, therefore, the

individual defendants should be entitled to qualified immunity.").

Although Plaintiff's amended complaint does not squarely raise such a claim, in her

opposition to Defendants' motion to dismiss, she alludes to a constitutionally protected liberty

interest in reputation and standing in the community (Dkt. No. 30 at 16).  Like the interest in

privacy, the contours of any protected liberty interest in reputation and standing in the

community are not clearly established.  *See Beitzell v. Jeffrey*, 643 F.2d 870, 877-79 (1st Cir.

1981) ("[T]he cases *suggest* there is a core interest in reputation which is protected from

interference by individualized government action; the Fourteenth Amendment protects reputation

only where (1) government action threatens it, (2) with unusually serious harm, (3) as evidenced

by the fact that employment (or some other right or status is affected." (footnote omitted)).  A

federal court cannot "define clearly established law at a high level of generality."  *al-Kidd*, 563

U.S. at 742.  As is the case with respect to Plaintiff's claims about a violation of her privacy

rights, she has pointed to no case that comes close to holding that a state actor's production of

documents in response to a validly issued subpoena interfered with an individual's

constitutionally protected liberty interest in his or her reputation and standing in the community.

Because Plaintiff has not met her burden of proving that qualified immunity does not apply, the

undersigned recommends that claims by Plaintiff that her constitutionally protected rights to

privacy and liberty also should be dismissed as to the individual defendants.

Furthermore, as is set forth above with respect to Plaintiff's equal protection claims, these

claims against the individual defendants should be dismissed for the additional reason that

Plaintiff has not alleged that either Mellis or Manley, through his individual actions, violated the

Constitution or any federal statute, *see Iqbal*, 556 U.S. at 676, and Plaintiff has not adequately

pled a basis for supervisory liability against either of these defendants.

    3.   Warrantless Search

While the claim is not clearly stated, it is possible to read Count III of the amended

complaint as asserting a Fourth Amendment violation based on an illegal entry into her home

(Dkt. No. 19 at 8-9, 17, ¶¶ 18, 34).   In this regard, Plaintiff alleges that, after she was discovered

unresponsive in her home and taken to the hospital, a police officer, acting without a warrant,

escorted a DCF case worker into Plaintiff's home where the police and the DCF case worker

took pictures and the DCF worker took personal objects.   Defendants contend that this entry

occurred in 2012 and that any claim based on it is therefore barred by the statute of limitations

(Dkt. No. 32 at 4-5).   "Section 1983 does not include a limitations period, but instead borrows

the relevant limitations period applied in personal injury cases in the state where the claim

arose."   *Meza v. Schaaf*, Civil No. 11-cv-483-JD, 2012 WL 2628045, at *2 (D.N.H. Mar. 21,

2012).   Massachusetts has a three-year statute of limitations for tort claims, including personal

injury claims.   *See* Mass. Gen. Laws ch. 260, § 2A.   The accrual date of a § 1983 claim,

however, is governed by federal law.   A § 1983 claim based on an allegedly illegal search

generally accrues on the date on which the search occurred.   *See Meza*, 2012 WL 2628045, at *2-

3.   Plaintiff's initial complaint was filed in state court on March 10, 2017 (Dkt. No. 1-2).   Thus,

absent unusual circumstances, of which none are alleged, claims based on any entry or search

that preceded March 9, 2014 are barred by the statute of limitations.

Defendants may very well be correct that the statute of limitations bars any claim based

on the entry into Plaintiff's home described in the amended complaint.   The problem with

Defendants' statute of limitations argument is that the amended complaint does not include the

date of the allegedly illegal entry and the date cannot be conclusively ascertained from the allegations in the amended complaint.  Nor would reliance on a police report, which, while it may be referenced in a footnote in the amended complaint, is not attached thereto, incorporated therein by reference, or relied on as support for allegations in the amended complaint, be appropriate at the motion to dismiss stage.  *See, e.g., Perkins*, 969 F. Supp. 2d at 164.  For these reasons, a dismissal based on the statute of limitations is not properly supported at this time.

That being said, in the court's view, Plaintiff's Count III nonetheless fails to state a claim based on an allegedly illegal search.  Dismissal of these claims against Mellis and Manley is required because Plaintiff has failed to allege conduct by either of these individuals that would support the imposition of liability.  As is set forth above, in § 1983 suits, a plaintiff must plead that each individual defendant, through his or her own actions*, has violated the plaintiff's federally protected rights. *See Iqbal*, 556 U.S. at 676.  The amended complaint does not allege that Mellis participated in, directed, or was on notice of the search when it occurred.  Nor does Plaintiff allege that Manley participated in, directed, or was on notice in advance of the illegal search.  The only act Plaintiff attributes to Manley is a meeting with Robert Allen after the allegedly illegal search during which Manley said that the Town's police department had been under a lot of pressure recently investigating voter fraud and other irregularities and suggested that Robert Allen ask for review by the MSP if he was dissatisfied with the police department's investigation of its response when Plaintiff was found unresponsive in her home (Dkt. No. 19 at 8, ¶¶ 18-19).  Even inferring that there was an inadequate investigation for which Manley bore some responsibility, "such a failure did not cause the incident."  *Turkowitz v. Town of Provincetown*, 914 F. Supp. 2d 62, 77 (D. Mass. 2012) (granting judgment on § 1983 claim based on police department's inadequate investigation of incident involving excessive use of

21

force) (citing *Kibbe v. Springfield*, 777 F.2d 801, 809 n.7 (1st Cir. 1985)).

As to possible supervisory liability, Plaintiff has not alleged that Mellis or Manley encouraged members of the police department to enter Plaintiff's home after she had been taken to the hospital, or to take pictures of the home, or to cooperate with a DCF case worker's or her ex-husband's entry into the home.  At most, it can be inferred that Manley learned after the fact about the warrantless entry into Plaintiff's home.  There are no allegations of a pattern or practice of illegal searches or entries by the Town's police department, or of any other prior course of conduct that might have alerted supervisors that there was a problem with illegal entries by their officers that needed to be addressed to avoid further harm to the Town's residents.  It follows that Plaintiff has not adequately alleged a basis for supervisory liability against Mellis or Manley as to any alleged Fourth Amendment violation and that any such claims against the individual defendants should be dismissed with prejudice.

4.  Municipal liability

"[T]here are certain circumstances under which a government entity may be held liable under § 1983." *Prospect Mountain JMA Sch. Dist. SAU 301*, 2014 WL 2588952, at *5 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).  Under *Monell*, the Town "can be held liable under Section 1983 only if one of its policies or customs caused the alleged deprivation of [Plaintiff's] constitutional rights." *Demers ex rel. Demers*, 263 F. Supp. 2d at 208.  When, as in this case, a plaintiff fails to adequately allege a constitutional violation by an individual employee, "there is no 'need [to] consider whether [she has] pled a basis for municipal liability under *Monell*,' *Gianfrancesco*, 712 F.3d at 640 n.4." *Prospect Mountain JMA Sch. Dist. SAU 301*, 2014 WL 2588952, at *5.  The Town is entitled to dismissal of Plaintiff's § 1983 claims based on alleged violations of her claimed equal protection and privacy rights and any liberty

interest in reputation and standing in the community because she has not adequately alleged that any individual defendant violated a clearly established constitutional right to equal protection, privacy, or liberty.  *Id.*

Furthermore,

> "Under Section 1983, it is well established that a municipality is not liable for the actions of its employees simply by virtue of the employment relationship." *Freeman v. Town of Hudson*, 849 F. Supp. 2d 138, 149 (D. Mass. 2012) (citing *Monell*, 436 U.S. at 691 . . . ).  "Instead, under *Monell* and subsequent cases, a plaintiff seeking to prove municipal liability under Section 1983 must identify a municipal policy or custom that caused plaintiff's injury." *Id.*  "A Section 1983 claim is only viable where 'the action that is alleged to be unconstitutional implements or executes a policy, statement, ordinance, regulation, or decision officially adopted or promulgated by that body's officers.'" *Id.* (quoting *Monell*, 436 U.S. at 690, . . . ).  In addition to "official" policies, a plaintiff may also point to a municipality's custom or practice that is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell*, 436 U.S. at 691 . . . .

*Opalenik v. v. LaBrie*, 945 F. Supp. 2d 168, 192 (D. Mass. 2013).

To the extent Plaintiff claims that the Town violated a constitutionally protected right to privacy or liberty when the police department responded to the subpoena, that claim fails.  In addition to the fact that Plaintiff has failed to adequately allege a violation of her federal constitutional rights by any municipal employee, which is fatal to her § 1983 claim against the municipality, she has not set forth facts from which it could be inferred that any alleged violations of her rights were the result of a policy, statement, ordinance, regulation, or decision officially adopted or promulgated by the Town or the Town's police department or of a custom or practice so well-settled that it amounted to a practice with the force of an officially promulgated policy.  *See Monell*, 436 U.S. at 690; *Opalenik*, 945 F. Supp. 2d at 192-93.  She has not alleged that the Town had issued any statement, official or otherwise, that directed what records its police department should or should not keep on its residents or how its police

department should respond to subpoenas for records in the police department's custody. The same is true with respect to Plaintiff's Fourth Amendment claim of an illegal warrantless search. She has not alleged that the Town had any policy with respect to cooperation with DCF employees, or that authorized warrantless searches in any circumstances. The MSP did not substantiate Plaintiff's claims of wrongdoing by the Town in connection with the alleged warrantless entry into her home (Dkt. No. 19 at 9, ¶ 19). Nor has she alleged a widespread and consistent practice as to any of these events that could be attributed to the Town as an established policy or practice.

Plaintiff's claim that the harm she suffered "must be" the result of a failure to properly train personnel (Dkt. No. 19 at 16, ¶ 33), is insufficient as a basis to support municipal liability. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62 (quoting *Bd. of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409 (1997)); *see also Stamps v. Town of Framingham*, 38 F. Supp. 3d 146, 160 (D. Mass. 2014). Plaintiff has not alleged a pattern of similar constitutional (or statutory) violations that could form a basis of municipal liability for failure to train. *See Leclair v. Mass. Bay Transp. Auth.*, Civil Action No. 17-11111-FDS, 2018 WL 314813, at *6 (D. Mass. Jan. 5, 2018) (granting motion to dismiss § 1983 claim where the plaintiff did not allege that the defendant was aware of incidents similar to the incident about which plaintiff complained). Even at the motion to dismiss stage, the absence of anything more than the speculative assertion offered by Plaintiff is insufficient to state a failure to train claim. *See Saldivar v. Racine*, 818 F.3d 14, 19-20 (1st Cir. 2016).

For the foregoing reasons, I recommend that Plaintiff's claims under § 1983 against the Town be dismissed with prejudice.

C.  State Law Claims

1.   The Court Should Decline to Exercise Supplemental Jurisdiction Over the State Law Negligence Claims.

When, as in this case, an action includes federal law and state law claims, a federal district court may exercise supplemental jurisdiction over state law claims that are so closely related to the federal claims that they "form part of the same case or controversy."  28 U.S.C. § 1367(a).  "However, where a plaintiff has failed to state a viable claim under federal law and jurisdiction over the remaining claim is based solely on supplemental jurisdiction, a 'district court has discretion to decline to exercise supplemental jurisdiction.'"  *Leclair*, 2018 WL 314813, at *6 (quoting *Uphoff Figueroa v. Alejandro*, 597 F.3d 423, 431 n.10 (1st Cir. 2010)).  Indeed, "it can be an abuse of discretion – if no federal claim remains – for a district court to retain jurisdiction over a pendent state law claim when that state law claim presents a substantial question of state law that is better addressed by the state courts."  *Wilber v. Curtis*, 872 F.3d 15, 23 (1st Cir. 2017).  If the presiding District Judge accepts the recommendation to dismiss all of Plaintiff's federal claims, all factors would weigh in favor of the court's declination of continuing jurisdiction.  *See, e.g., Camelio v. Am. Fed'n*, 137 F.3d 666, 672 (1st Cir. 1998) (citing *Rodriguez v. Doral Mortg. Corp.,* 57 F.3d 1168, 1177 (1st Cir.1995)) (observing that "the balance of competing factors ordinarily will weigh strongly in favor of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation"); *see also Leclair*, 2018 WL 314813, at *7 (district court declined to exercise supplemental jurisdiction over negligence claim after dismissing federal claim); *Perkins*, 969 F. Supp. 2d at 163, 183-84 (presiding District Judge adopted recommendation that state law claims

be dismissed without prejudice where the Magistrate Judge also recommended dismissal of all federal claims asserted against all defendants).

Where this court recommends dismissal of all federal claims asserted in the amended complaint and that the presiding District Judge decline to exercise supplemental jurisdiction over the remaining state law claims, the sufficiency of the pleadings as to the state law claims does not merit an extended discussion. *Cf. Perkins*, 969 F. Supp. 2d at 179, 183 (the Magistrate Judge declined to address state law claims where she recommended dismissal of all federal claims against all defendants). Nonetheless, in the event that the presiding District Judge does not adopt the recommendations set forth above to dismiss all of Plaintiff's federal claims, I will briefly address the sufficiency of the pleading as to her state law negligence claims.

2.  Plaintiff's Negligence Claims Against Mellis and Manley.

Count One of the amended complaint appears to assert claims of negligence against Mellis and Manley individually. Any such claims are barred by the Massachusetts Tort Claims Act, Mass. Gen. Laws ch. 258, § 2 ("MTCA"), which provides, in pertinent part, that "no such public employee or the estate of such public employee shall be liable for any injury or loss of property or personal injury or death caused by his negligent or wrongful act or omission while acting within the scope of his office or employment." It is not alleged that Mellis or Manley was acting other than within the scope of his office or employment (Dkt. No. 19 at 5, ¶ 10). Accordingly, if the presiding District Judge reaches the issue, I recommend dismissal with prejudice of the negligence claims asserted against the individual defendants. *See Opalenik*, 945

26

F. Supp. 2d at 196 (dismissing claims of negligent infliction of emotional distress as barred by the MTCA); *Pollard*, 132 F. Supp. 3d at 233 (same).[7]

    3.  Supervisory Negligence Claims Against the Town.

In the court's view, the First Circuit's decision in *Kennedy v. Town of Billerica*, 617 F.3d at 532-33, would dictate dismissal by this court of Plaintiff's state law claim of supervisory negligence against the Town because Plaintiff has not adequately pled the commission of any specific tort claims traceable to the Town's alleged supervisory negligence. The *Kennedy* court observed that "[n]o Massachusetts case has been cited to us that has ever recognized a supervisory negligence claim against municipalities for generalized free-standing and unspecified wrongs when no individual employee or group of employees committed an underlying tort." *Id.* at 533. Plaintiff's amended complaint is short on specifics. She alleges general animosity against her manifested by members of the Town's police department over a period of years which, she claims, resulted in injury to her reputation and standing in the community (Dkt. No. 19 at 3, 12-13, ¶¶ 5-6, 26). "[T]hus far, Massachusetts cases have only allowed supervisory negligence claims against municipalities where the municipality knew or should have known about an underlying identifiable tort which was committed by named or unnamed public employees." *Kennedy*, 617 F.3d at 533. The gravamen of Plaintiff's amended complaint is the police department's response to the Family and Probate Court subpoena. As is

---

[7] Any claim by Plaintiff that Mellis or Manley committed an intentional tort by reason of the Town's response to the Family and Probate Court subpoena based on the provisions of Mass. Gen. Laws chs. 41, § 97D or 265, § 24C, would also be likely to fail. First, Plaintiff has not alleged that either Mellis or Manley personally took any step to respond to the subpoena, thereby personally engaging in tortious conduct. Second, even if Plaintiff had made such an allegation, she has cited to no state court authority for the proposition that a plaintiff can ground a claim for tort damages on an alleged violation of Mass. Gen. Laws ch. 41, § 97D or Mass. Gen. Laws ch. 265, § 24C. This court "is not the appropriate place to adopt a novel and expansive view of [individual] liability under state law." *Kennedy*, 617 F.3d at 533.

set forth *supra*, when she relies on this event as a basis for her state law negligence claim, she is asserting a tort claim that, so far as appears from decided cases, does not appear to be cognizable under Massachusetts law.  While Plaintiff makes some other allegations about police misconduct, the amended complaint does not assert any tort claims under Massachusetts law other than negligence.  Thus, the court is left with allegations about "generalized, free-standing and unspecified wrongs" as a basis for the claim in Count Two of negligent supervision by the Town.  This, the *Kennedy* court says, is insufficient.  For this reason, if the presiding District Judge elects to reach the issue, I recommend dismissal of the negligent supervision claim asserted against the Town.  *See Stamps*, 38 F. Supp. 3d at 161 (a municipality is liable under the MCTA only if knew or should have known that its employee was committing a tort) (citing *Kennedy*, 617 F.3d at 533).

IV.   CONCLUSION

For the foregoing reasons, it is this court's recommendation that the federal claims asserted in Counts One, Two, and Three of the amended complaint be dismissed with prejudice, that the presiding District Judge decline to exercise supplemental jurisdiction over the state law negligence claims asserted in Counts One and Two, that these claims be dismissed without prejudice, and that the case be closed on the court's docket.  If the court elects in its discretion to retain supplemental jurisdiction over the state law negligence claims, I recommend that the negligence claims against Mellis and Manley and the Town be dismissed, also with prejudice.[8]

---

[8] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court within fourteen (14) days of the party's receipt of this Report and Recommendation.  The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection.  The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and

/s/ Katherine A. Robertson_____
KATHERINE A. ROBERTSON
United States Magistrate Judge

DATED:  February 9, 2018

---

Recommendation.  *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980).  *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.